**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

LARRY WARD,

    Plaintiff,

v.

INGERSOLL-RAND COMPANY, et al.,

    Defendants.

Civil Action No. 15-327 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This action arises from Defendant Trane U.S. Inc.'s ("Trane") suspension and termination of Plaintiff Larry Ward's ("Plaintiff") employment. Following his termination from Trane in September 2014, Plaintiff filed a Complaint against Defendants Ingersoll-Rand Company and Trane (collectively, "Defendants") asserting claims for: (1) violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 ("NJLAD"); (2) common-law wrongful discharge; and (3) violation of the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). (*See generally* Compl., ECF No. 1-2.) This matter comes before the Court on Defendants' Motion for Summary Judgment. (ECF No. 17.) Plaintiff filed opposition (ECF No. 21), and Defendants replied (ECF No. 26). The Court, having considered the parties' submissions, decides the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion for Summary Judgment is granted.

**I.    Background**

Plaintiff worked as an hourly-unionized employee for Trane from August 2008 to September 2014, with some breaks in employment due to "layoff[s] for lack of work" and a

termination, which was later reversed. (Pl.'s Response to Defs.' Statement of Facts ("Pl.'s RSOF") ¶ 2, ECF No. 22.)[1] In May 2013, Plaintiff suffered a workplace injury when he placed his left index finger inside a press causing an advancing sheet of metal to impact his left index finger. (*Id.* ¶¶ 37-38.) Following this injury, Plaintiff's fingertip required surgical reattachment, and he was placed on "medical leave" for approximately seven weeks. (*Id.* ¶ 37.) Plaintiff's medical expenses and lost pay during this time period were paid through Travel Insurance Company, Trane's worker's compensation carrier. (*Id.* ¶¶ 39-40.) Plaintiff returned to work in July 2013, with certain light-duty restrictions per his physician's orders until September 2013. (*Id.* ¶¶ 41-42.) As of September 4, 2013, Plaintiff's physician released Plaintiff to unrestricted work. (*Id.* ¶ 43.)

In the year before his medical leave, Plaintiff received two written warnings for poor job performance and violation of a safety rule, respectively.[2] (*Id.* ¶ 36.) After returning from medical leave, Plaintiff received three more warnings, which resulted in his termination and are the subject of his Complaint. (*See generally* Compl.) First, Plaintiff received a written warning for returning late from a break on September 18, 2013. (Defs.' SOF ¶ 58, ECF No. 17-2.)[3] Pursuant to Trane's

---

[1] Local Civil Rule 56.1 (the "Rule") provides that "[t]he opponent of summary judgment shall furnish . . . a responsive statement of material facts, addressing each paragraph." L. Civ. R. 56.1. Furthermore, the Rule provides that "[e]ach statement of material facts . . . shall not contain legal argument or conclusions of law." *Id.* Thus, Plaintiff's insertion of legal argument and blanket denials of multiple paragraphs of Defendants' Rule 56.1 statement is improper under the Rule and not helpful to the Court. Nonetheless, the Court has endeavored to parse through these submissions to identify genuine disputes of material facts.

[2] Plaintiff does not dispute the legitimacy of these warnings, which occurred before Plaintiff's workplace injury. (Pl.'s RSOF ¶ 36.)

[3] Although Plaintiff disputes the fairness and propriety of the discipline that he received, he does not dispute that he returned late to his workstation on September 18, 2013. (Pl.'s RSOF ¶¶ 46-79.)

2

progressive four-step disciplinary policy, as this was Plaintiff's third violation of a work rule, Plaintiff was suspended from October 2, 2013, to October 4, 2013, as a result of this violation. (*Id.* ¶ 60.) Next, Plaintiff received a written warning for eating sunflower seeds on the shop floor on October 11, 2013. (*Id.* ¶¶ 73, 76.) As this was Plaintiff's fourth violation of a work rule, pursuant to Trane's policy, Plaintiff was terminated. (*Id.* ¶ 77.)

Thereafter, Plaintiff filed a grievance with his union regarding his three-day suspension for his alleged violation of a work rule on September 18, 2013. (Pl.'s RSOF ¶ 87.) A union arbitration was held regarding Plaintiff's grievance. (*Id.* ¶ 88.) On July 14, 2014, the arbitrator issued an award in favor of the union and ordered that Plaintiff's September 25, 2013[4] warning be stricken from his employment record, his suspension be removed, and that he be made whole for lost wages and other benefits resulting from his suspension. (*Id.* ¶¶ 88, 90.) Notwithstanding her finding for the union, the arbitrator noted that "the record does not support or in any way indicate, as alleged, that grievant was singled out for disparate treatment in retaliation for his having filed a Worker's Compensation claim, or that he was otherwise subject to any disparate treatment." (Pl.'s RSOF, Ex. 13 ("Arbitrator Op."), ECF No. 21-14.)

With the removal of the September 25, 2013 warning from Plaintiff's record, he was found to have only three warnings and was thus returned to work on July 18, 2014. (Pl.'s RSOF ¶¶ 2, 94.) Plaintiff was, however, terminated once again on September 10, 2014, for allegedly violating

---

[4] Although Plaintiff's rule violation occurred on September 18, 2013, the warning for this violation was issued on September 25, 2013.

3

several work rules regarding leaving a work station without permission between September 3, 2014, and September 5, 2014. (Defs.' SOF ¶ 132.)

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that "a court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The substantive law identifies which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989).

The Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *See Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986). The Court will not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson*, 477 U.S. at 249. While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the non-moving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be no genuine [dispute] of material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (internal quotation marks omitted). If the non-moving

4

party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Furthermore, "a party does not raise a genuine [dispute] of material fact by speculation and conclusory allegations." *Dunkin Donuts v. Patel*, 174 F.Supp.2d 202, 210 (D.N.J. 2001).

## III. Analysis

In their motion, Defendants note that Plaintiff's claims under the NJLAD, FMLA, and common law are all based on the same set of facts:

> Basically, Plaintiff alleges that the disciplines issued to him following his workplace injury, which resulted in suspension and terminations pursuant to Trane's progressive disciplinary policy, were either discriminatory on the basis of a disability, or retaliatory responses to his receipt of workers' compensation benefits, or retaliatory responses to his exercise of rights under the FMLA.

(Defs.' Moving Br. 6-7, ECF No. 17-1.) Significantly, all three of these claims are analyzed under the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973). *See Sarnowski v. Air Brook Limousine Inc.*, 510 F.3d 398, 403 (3d Cir. 2007) (applying *McDonnell Douglas* framework to NJLAD claim); *Morris v. Siemens Components Inc.*, 928 F. Supp. 486, 493 (D.N.J. 1996) (applying *McDonnell Douglas* framework to retaliatory discharge claim); and *Lupyan v. Corinithian Colleges, Inc.*, 761 F.3d 314, 324 (3d Cir. 2014) (applying *McDonnell Douglas* framework to FMLA retaliation claim).

Pursuant to *McDonnell Douglas*, the plaintiff bears the initial burden of establishing a prima facie claim of employment discrimination or retaliation. *See McDonnell Douglas*, 411 U.S. at 802-03. At the second stage, the employer must produce evidence that, if believed, would establish a legitimate, nondiscriminatory explanation for its treatment of the plaintiff. *See id.* at 804-05. If the employer meets this burden, the plaintiff must then submit evidence sufficient to

convince a reasonable factfinder that the employer's explanation is a pretext for intentional discrimination or retaliation. *See id.*

Importantly, to survive a summary judgment motion, "the plaintiff's evidence rebutting the employer's proffered legitimate reasons must allow a factfinder reasonably to infer that each of the employer's proffered non-discriminatory reasons was either a post hoc fabrication or otherwise did not actually motivate the employment action." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (internal quotation marks omitted) (emphasis omitted). In other words, "the non-moving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence." *Id.* at 765 (internal quotation marks omitted) (emphasis omitted).

Here, even assuming that Plaintiff established prima facie claims of discrimination and retaliation,[5] the Court finds that his claims fail. As discussed below, Defendants have provided sufficient evidence that, if believed, establishes legitimate, nondiscriminatory explanations for Plaintiff's suspension and termination. To rebut these explanations, Plaintiff primarily relies upon his own testimony and speculation as to the meaning of a directive to his supervisor from a human relations employee to "keep an eye on" Plaintiff. This evidence is not sufficient to convince a

---

[5] *See Sattar v. Johnson*, 129 F. Supp. 3d 123, 138 (S.D.N.Y. 2015) ("Second Circuit case law makes clear that the court may simply assume that the plaintiff has established a prima facie case and skip to the final step in the *McDonnell Douglas* analysis, as long as the employer has articulated a legitimate nondiscriminatory reason for the adverse employment action.") (collecting cases); *Adelman-Reyes v. Saint Xavier Univ.*, 500 F.3d 662, 665 (7th Cir. 2007) ("The prima facie case and pretext inquiries often overlap; we may skip the analysis of a plaintiff's prima facie case and proceed directly to the evaluation of pretext if the defendant offers a nondiscriminatory explanation for its employment decision."). The Third Circuit has not specifically addressed this issue.

reasonable factfinder that Defendants' proffered reasons for suspending and terminating Plaintiff were either post hoc fabrications or otherwise unworthy of credence.

### A. September 25, 2013 Written Warning

First, with respect to the warning that Plaintiff received for returning to his work station late on September 18, 2013, Trane's rulebook provides that the "[f]ailure to be at a work station [sic] and ready to work at the beginning of the shift and immediately after break periods" constitutes an offense. (Decl. Janet O. Lee ("Lee Decl."), Ex. O ("Trane's Work Rules"), ECF No. 17-7.) Testimony from Trane's employees, as well as documentary evidence, indicates that before issuing Plaintiff a warning for violating this rule, Plaintiff's supervisor, Mr. Gantt, was instructed to strictly enforce this rule. (Lee Decl., Ex. I ("Costandino Dep.") 16:1-4, ECF No. 17-6; Lee Decl., Ex. AA ("Costandino Sept. 16, 2013 E-mail"), ECF No. 17-8; Lee Decl., Ex. BB ("Gantt Sept. 18, 2013 E-mail"), ECF No. 17-8.) In particular, on September 16, 2013, Plaintiff's production leader, Dennis Costandino sent an e-mail message to the team supervisors, including Mr. Gantt, reminding them that they were to strictly enforce start, stop, and break times. (Costandino Sept. 16, 2013 E-mail.) Accordingly, Mr. Gantt stated that on September 17, 2013, he advised operators on his team that he would be strictly enforcing this rule. (*See* Gantt Sept. 18, 2013 E-mail.) Consistent with his declaration regarding the strict enforcement of this rule, Mr. Gantt's September 18, 2013 e-mail message to Ms. Scannella indicates that, in addition to Plaintiff, he also disciplined another employee on the same day for violating this rule by being one minute late to his workstation. (*Id.*) Furthermore, in September 2013, nineteen employees other than Plaintiff received discipline for "failure to be at work station and ready to work at the beginning of the shift and immediately after break periods." (Lee Decl., Ex. EE, ECF No. 17-8.)

In his opposition, Plaintiff relies on his own testimony as well as the testimony of Mr. Gantt and Ms. Scanella to assert that Defendants' proffered explanation for this discipline is pretext. Plaintiff does not, however, dispute that he arrived late to his workstation on September 18, 2013. Rather, Plaintiff argues that the proffered reason for the discipline was improper because the reason that he was late in returning to his workstation was because he was changing his bandages in the nurse's office. The fact that Mr. Gantt knew the reason why Plaintiff was late in returning to his work station does not rebut Defendants' explanation that they wanted to strictly enforce the rule regarding returning from breaks. Indeed, Plaintiff testified that it was his understanding that absent a note from his physician, which he did not obtain, Defendants would not give him additional time during breaks to change his bandages. (Lee Decl. Ex. B ("Ward Dep.") 150:22-151:9, ECF No. 17-4.) Thus, consistent with Plaintiff's understanding of Defendants' policy, notwithstanding Mr. Gantt's awareness of the reason for Plaintiff's tardiness, Mr. Gantt issued Plaintiff a warning for returning late to his workstation. Moreover, while Plaintiff contends that the timing of this discipline – approximately two months after his return from medical leave – supports an inference of retaliation, "it is well settled that the close temporal proximity between a protected act and an adverse employment action, alone, is insufficient to raise an inference of retaliation." *Carvalho v. Aircraft Serv. Int'l, Inc.*, No. 12-2430, 2013 WL 5567164, at *11 (D.N.J. Oct. 8, 2013); *see also Cohen v. Pitcairn Trust Co.*, No. 99-5441, 2001 WL 873050, at *9 (E.D. Pa. June 20, 2001) ("The fact that the termination occurred close in time to the request for FMLA leave is not sufficient to carry plaintiff's burden.").

In addition to Mr. Gantt's testimony, Plaintiff also relies on the arbitrator's finding that there was no just cause for Plaintiff's September 25, 2013 suspension to argue that Defendants' explanation for the discipline was pretext. The arbitrator's analysis was, however, limited to the

record before her, which the arbitrator found "f[e]ll short of establishing just cause for grievant's suspension." (Arbitrator's Op. 10.) In particular, as the arbitrator noted in her opinion, neither Mr. Gantt nor Mr. Costandino testified in the proceeding and thus did not "shed light on or more fully explain the circumstances resulting in the discipline under review." (*Id.* at 11.) In contrast, as discussed above, here, Defendants provided testimony from both Mr. Gantt and Mr. Costandino, and, in particular, Defendants provided a contemporaneous e-mail message from Mr. Gantt stating that on September 17, 2013, he advised the operators that they had to be "at [their] workstation and ready to go immediately after break." (Gantt Sept. 18, 2013 E-mail.) Specifically, Mr. Gantt's e-mail message stated that he advised the operators that "[i]f you are not in place as soon as the clock changes from 9:14 to 9:15" you are in violation of the rule. (*Id.*) In addition, Mr. Gantt testified that he "wanted everybody in [his] department to know what [his] position was on coming back from breaks on time." (Lee Decl., Ex. K ("Gantt Dep.") 59:22-60:1, ECF No. 17-6.) Thus, the arbitrator's finding that, based on the record before her, Defendants had failed to show that there was just cause for the September 25, 2013 discipline does not rebut the Defendants' proffered explanation, which is supported by evidence in this proceeding.

### B. October 14, 2013 Written Warning

Second, with respect to the warning that Plaintiff received for eating sunflower seeds on the shop floor on October 11, 2013, Trane's rulebook provides that employees are not to have uncovered food or drink at their workstations. Ms. Scanella testified that Trane considered eating on the shop floor to be a "safety hazard . . . quality issue. . . ." (Trane's Work Rules; Lee Decl., Ex. E ("Scanella Dep.") 68:2-3, ECF No. 17-5.) In addition, Mr. Costandino testified that Trane strictly enforced the rule against having uncovered food on the shop floor. (Costandino Dep. 17:13-19.) In addition, Mr. Gantt testified that Plaintiff "was the worst offender" of the rule

against eating on the shop floor, and that he and Mr. Costandino had told Plaintiff numerous times that he could not eat seeds at his workstation. (Gantt Dep. 17:7-18:3.) Furthermore, Defendants presented evidence showing that employees other than Plaintiff were issued written warnings for eating on the shop floor between September 2013 and December 2013. (Lee Decl., Exs. DD, ECF No. 17-8.)[6]

To rebut Defendants' explanation for this discipline, Plaintiff asserts that "everyone in the plant has some drinks and food laying around at times"; his own manager, Mr. Gantt, "chewed peanuts throughout the day"; and "numerous employees around him continuously ate sunflower seeds and other small snacks daily in the open, but he was singled out." (Pl.'s Counterstatement of Facts ¶ 30, ECF No. 21-1.) Plaintiff, however, conceded that he did not know whether these employees were disciplined for this conduct, and Trane's disciplinary records indicate that employees other than Plaintiff were issued warnings for eating on the shop floor. (Lee Decl., Ex. DD, ECF No. 17-8.) Thus, Plaintiff's self-serving testimony, which is contradicted by documentary evidence and the testimony from his supervisors and a human relations employee, is not sufficient to rebut Defendants' explanation for this discipline. *See Bodison v. Univ. and Dentistry of N.J.*, No. 07-2616, 2009 WL 1298502, at *3 (D.N.J. May 8, 2009) (holding that Plaintiff's uncorroborated statements were not sufficient to defeat defendant's motion for summary judgment on gender discrimination claim).

### C. October 6, 2014 Termination

Third, with respect to the discipline Plaintiff received for leaving his workstation without permission, Trane's rulebook prohibits such conduct. In addition, Brian Toliver ("Mr. Toliver"), Plaintiff's supervisor at the time of this incident, testified that "walking off the line" is "severe."

---

[6] The relevant warnings on the "discipline tracker are "safety violation." (*See* Defs. SOF ¶ 78.)

10

(Lee Decl., Ex. L ("Toliver Dep.") 14:20-15:2, ECF No. 17 6.) Mr. Toliver, who supervised Plaintiff during his last approximately two months of employment at Trane, also testified that on September 3, 2014, he requested that Plaintiff receive a written warning because, inter alia, as a result of Plaintiff's absence from his workstation the line had to be shut down. (*Id.* at 56:17-21.) Furthermore, the testimony of Jim Keller ("Mr. Keller"), Plaintiff's group leader, supported Defendants' assertion that Plaintiff was aware of the rule that employees needed to ask permission to leave their workstations. (Lee Decl., Ex. H ("Keller Dep.") 33:4-34:1, ECF No. 17-5.) Consistent with Mr. Keller's testimony, Plaintiff also testified that he regularly asked Mr. Keller for permission to leave his workstation:

> Q. Did Jim [Keller] ever give you permission to leave your station?
> A. Yes.
> Q. And when was that?
> A. Every day.
> Q. Can you summarize for us specifically what he said to you?
> A. Well, I would ask him, you know, Jim, *I have to come ask you*, can I get a drink? Go ahead, I don't care. Jim, I have to use the bathroom. What you telling me for? Go ahead.

(Pl.'s Counterstatement of Fact, Ex. 31 ("Ward Dep.") 210:13-211:3, ECF No. 22-16.) In addition, Defendants presented evidence showing that two other employees were terminated in 2014 for leaving their work areas without the permission of their supervisors or failing to be at the workstation and ready to work during working hours.

To rebut this explanation for the discipline that Plaintiff received, Plaintiff relies on Mr. Toliver's testimony regarding the amount of attention that employees in Trane's human relations

department gave to Plaintiff and a conversation that he had with Jason Perelman regarding Plaintiff's return[7] to work in July 2014. In particular, Mr. Toliver stated that:

> There was a statement of [Plaintiff's] a guy, and I can't remember the exact wording, but [Plaintiff's] a guy that we want to keep an eye on and the inference was to, like we need to . . .
>
> Not that we don't like [Plaintiff] very much. Basically, that [Plaintiff] was a guy that didn't belong there.

(Toliver Dep. 111:7-12; 111:23-112:1.) This testimony does not rebut Trane's proffered explanation for disciplining Plaintiff for leaving his workstation on multiple occasions without permission. Indeed, as Mr. Toliver was the one who requested that Plaintiff receive a warning for leaving his workstation, this discipline was not initiated by employees in Trane's human relations department, thus neither the alleged extra attention from the human relations department nor Mr. Perelman's alleged animus towards Plaintiff is relevant to this incident. *See also Carvalho*, 2013 WL 5567164, at *9 (finding that "speculation as to the meaning" of an individual's comments "is insufficient to raise a genuine issue of material fact as to whether Plaintiff has satisfied his burden of establishing a prima facie case of retaliation").

Furthermore, Plaintiff has not shown that it was pretext for Defendants to adhere to Trane's four-step progressive discipline policy whereby, Plaintiff's violation of the rule against leaving his workstation without permission resulted in termination. In particular, Defendants presented documentary evidence detailing this procedure and showing that it was applied to many other employees. (Trane Work Rules; Lee Decl., Exs. DD, EE, ECF No. 17-8.) In addition, both Ms.

---

[7] After successfully "grieving" his third warning, Plaintiff's employment was reinstated on July 8, 2014, pursuant to his union arbitration proceeding. Mr. Toliver, however, testified that in July 2014, Mr. Perelman told him that Plaintiff was returning to work from his medical leave. (Toliver Dep. 110:3-6.) Mr. Toliver also testified that he was not aware of Plaintiff's October 22, 2013 termination. (*See id.*)

12

Notta and Mr. Perelman testified that all Trane employees who received four written warnings were terminated, and Defendants presented documentary evidence showing that at least twenty-six other Trane employees were terminated pursuant to the progressive disciplinary policy in 2013, and at least eleven employees were terminated pursuant to the progressive disciplinary policy in 2014. (Lee Decl., Ex. C ("Notta Dep.") 26:17-21, ECF No. 17-4; Lee Decl., Ex. F ("Perleman Dep.") 52:9-24, ECF No. 17-5; Lee Decl., Exs. DD, EE, ECF No. 17-8); *see Howell v. PPL Servs. Corp.*, 232 F. App'x 111, 113 (3d Cir. 2007) (affirming grant of summary judgment in employment discrimination case where plaintiff did not produce "sufficient admissible evidence that similarly-situated employees outside a protected class were treated more favorably or more leniently than [plaintiff] for having committed substantially similar offenses").

Thus, the record contravenes Plaintiff's contention that "[t]here is . . . an immense amount of comparator disparate treatment, falsity, lack of plausibility to Defendants' defense, and factual dispute." (Pl.'s Opp'n Br. 6.) Plaintiff has failed to demonstrate "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Trane's] proffered legitimate reasons for its action [so] that a reasonable factfinder could rationally find them unworthy of credence." *See Fuentes*, 32 F.3d at 764. Accordingly, Plaintiff's claims against Defendants fail as a matter of law.

## IV. Conclusion

For the reasons set forth above, and for other good cause shown, Defendants' Motion for Summary Judgment is granted.

s/ Michael A. Shipp
**MICHAEL A. SHIPP**
**UNITED STATES DISTRICT JUDGE**